UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V. and PHILIPS NORTH AMERICA LLC, <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> ZOLL MEDICAL CORPORATION, <br><br> Defendant/Counterclaim-Plaintiff. | C.A. No. 1:10-cv-11041-NMG <br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANT ZOLL MEDICAL CORPORATION'S MOTION IN LIMINE TO EXLUDE UNDISCLOSED EXPERT OPINION ON INFRINGING CLINICAL STUDIES**

ZOLL moves (1) to strike John Freese's testimony that two of ZOLL's clinical studies were "infringing," and (2) to preclude Philips's damages expert John Jarosz from relying on this improper testimony. ZOLL also requests that this Court preclude Mr. Jarosz from testifying about "infringing" clinical studies, since Mr. Jarosz did not disclose any opinion of his own about whether ZOLL's clinical studies infringed any Philips patent.

ZOLL and Philips both agree that Dr. Freese should not have testified about infringement. Prior to trial, Dr. Freese never disclosed any opinion that ZOLL's clinical studies were infringing. When Dr. Freese testified that two of ZOLL's clinical studies were infringing, ZOLL immediately objected. At the conclusion of Dr. Freese's testimony, ZOLL renewed its objection and informed the Court that it intended to file this motion. In response, Philips admitted that Dr. Freese should not have testified about infringement: "Dr. Freese has testified on the self-test capabilities, ***not talking about infringement***; he's talking about the importance of it clinically." Trial Tr. at 2-202:21-23. ZOLL agrees. Dr. Freese should have only testified about the importance of ZOLL's clinical studies, as was disclosed in his report, and not whether these studies infringed.

I.   **BACKGROUND**

At the liability trial, the jury found that ZOLL directly infringed Philips's '454 and '905 patents. The jury found that ZOLL did not indirectly infringe. On appeal, the Federal Circuit upheld the jury's decision, finding that "Zoll infringed the waveform method claims during its own product testing and trials." *Koninklijke Philips N.V. v. ZOLL Med. Corp.*, 656 F. App'x 504, 519 (Fed. Cir. 2016). Neither the jury nor the Federal Circuit determined which specific clinical trials constituted direct infringement, and thus there has not been a finding as to the scope of direct infringement by ZOLL.

Following the liability trial, the parties proceeded with damages discovery, and Philips disclosed two experts relevant to this motion: Dr. John Freese and John Jarosz. Dr. Freese was retained to "opine on certain issues involving biphasic waveform with impedance compensation technology, including the clinical benefits of this technology in cardioversion and defibrillation, Zoll's clinical testing on this technology, and Zoll's marketing of this technology when selling defibrillators." Freese Oct. 21, 2016 Rpt. ¶ 1. Nowhere in his expert report or deposition does Mr. Freese disclose an opinion that a ZOLL clinical study constituted infringement of Philips's patents. Mr. Jarosz opined as to Philips's damages. Like Dr. Freese, Mr. Jarosz did not disclose an opinion that ZOLL's clinical studies infringed. When asked at deposition to give a single example of a study that involved infringing testing by ZOLL, Mr. Jarosz answered that he "relied on the report of Dr. Freese," Jarosz March 3, 2017 Dep. at 76:11-12, even though the report of Dr. Freese did not provide an opinion on any infringing testimony.

Before the trial, ZOLL filed a motion *in limine* to exclude evidence of infringing studies not presented at the liability trial. Dkt. 991. This Court denied the motion. Dkt. 1083. ZOLL's motion *in limine* did not raise the arguments that ZOLL puts forth in this motion, as ZOLL was unaware until trial that Dr. Freese (or Mr. Jarosz) would testify that specific ZOLL clinical studies were infringing.

On Tuesday, July 25, Dr. Freese for the first time testified that two clinical studies were "infringing." ZOLL objected to that testimony as beyond the scope of Dr. Freese's report, but the Court overruled those objections. At the end of his testimony, ZOLL previewed with the Court that it intended to file a motion to limit Mr. Freese's testimony. Philips responded that Dr. Freese was "not talking about infringement; he's talking about the importance of it clinically." Trial Tr. at 2-202:21-23. ZOLL now brings this motion to strike Mr. Freese's

testimony about infringement and to preclude Mr. Jarosz and the jury from relying on that testimony.

## II.     AN EXPERT WITNESS CANNOT GIVE UNDISCLOSED OPINIONS AT TRIAL

Federal Rule of Civil Procedure 26(a) provides that expert disclosures "must be accompanied by a written report" that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Under Rule 37, "[t]he required sanction in the ordinary case is *mandatory* preclusion." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (emphasis added). Together, Rules 26 and 37 "seek to prevent the unfair tactical advantage" to be gained from not timely disclosing an expert's testimony. *Id.*

In *Carlucci v. CNH Am. LLC*, for example, the plaintiff's expert opined that the defendant's warnings related to a particular product were inadequate, but this opinion was not found in his expert report. *Carlucci v. CNH Am. LLC*, No. CIV.A. 10-12205-DPW, 2012 WL 4094347, at *2 (D. Mass. Sept. 14, 2012). The Court excluded this new opinion and granted summary judgment, explaining that "[b]ecause [the expert's] report does not contain his opinion about the inadequate warnings, his testimony is inadmissible at trial 'unless the failure was substantially justified or is harmless.'" *Id.* at *7 (citing Fed. R. Civ. P. 37(c)(1)). The Court found that there was no justification for introducing a new theory of liability after the submission of the expert report, and that it "can hardly be said to be harmless coming at the conclusion of discovery." *Id.*

## III. PHILIPS'S EXPERTS DID NOT DISCLOSE ANY OPINIONS THAT ZOLL'S CLINICAL STUDIES WERE INFRINGING

Neither Dr. Freese nor Mr. Jarosz identified any clinical studies as infringing.

### A. Dr. Freese Did Not Identify Any Infringing Clinical Studies

Dr. Freese's expert report on damages is titled as the Supplemental Expert Report Of John P. Freese, M.D. On Technical And Clinical Matters Involving Defibrillators. Freese Oct. 21, 2016 Rpt. at 1. In the paragraph that begins the primary section of his report, Dr. Freese sets forth a summary of his opinion on damages:

> If called to testify at trial, I may offer expert opinion on the topics described in my previous expert reports as well as in this report. This includes testimony on the clinical context of care for patients with heart disease and the use of defibrillators in the field, including out-of-hospital use by laypersons, first responders, emergency medical service personnel, and other trained providers as well as in-patient use in hospital settings such as the emergency department. I am also prepared to give testimony on the use of defibrillators by doctors to perform cardioversion, as well as the clinical benefits of a biphasic waveform with impedance compensation, including Zoll's clinical testing of this technology, Zoll's marketing of this technology when selling defibrillators, and the importance of this feature when performing cardioversion.

*Id.* ¶ 11. In his expert report, Dr. Freese discusses several clinical studies. However, *Dr. Freese never opined that a study was infringing*. Mr. Freese was also deposed in this case and questioned about his damages report. He confirmed at deposition that his report "contain[ed] a complete statement of [his] opinions," and at deposition Dr. Freese never referred to any clinical study as infringing. *See* Freese Feb. 16, 2017 Dep. at 59:5-7.

### B. Mr. Jarosz Did Not Identify Any Infringing Clinical Studies

In his report, Mr. Jarosz also does not identify any infringing clinical studies or opine as to whether a particular study infringed Philips's patents. Instead, Mr. Jarosz cites to the Federal Circuit's finding that ZOLL infringed Philips's patents during certain (unidentified) clinical

testing, Jarosz Rpt. at 52-53, and Mr. Jarosz claims that "ZOLL's core strategy was to rely on its post-approval clinical tests to support its efficacy and marketplace superiority claims." *E.g.*, *id.* at 54.  However, *Mr. Jarosz's never identifies specific infringing clinical studies*.

During his deposition, Mr. Jarosz confirmed that he did not (and could not) identify clinical studies as infringing or not infringing and did not know how many clinical studies constituted acts of infringement.  *See, e.g.*, March 3, 2017 Jarosz Dep. at 84:2-4 ("Q. How many tests do we have that constitute acts of direct infringement after 2004?  A. I don't know that answer.").  Mr. Jarosz could not even answer whether there was more than one infringing clinical study to support his damages theory.  *Id.* at 84:9-10 ("Q. Is there more than one?  A. I still don't know the answer.").  In response to questions about ZOLL's clinical studies and how many of the studies were actually infringing, Mr. Jarosz responded that "*I don't know with certainty because I'm not an infringement expert*."  *Id*. at 85:3-7 (emphasis added).

Mr. Jarosz was also asked at deposition about an opinion given by ZOLL's rebuttal expert that "[m]any of the clinical studies that are referenced in the marketing materials identified by Mr. Jarosz were not actually infringing because they occurred in connection with Zoll's efforts to seek FDA approval for its devices, occurred outside of the United States, or involved animals as opposed to human patients."  *See* March 3, 2017 Jarosz Dep. at 171:6-14. Mr. Jarosz testified that he did not have any views as to whether this rebuttal to his report was correct.  *Id*. at 171:17-22.  He also specifically admitted that he "*didn't categorize[] the studies that [he] cited as either infringing or non-infringing*."  *Id.* at 171:23-172:6 (emphasis added).

Instead, Mr. Jarosz testified that he "relied on the report of Dr. Freese, and so he may address that specific issue [of infringing clinical studies].· You're asking me about the precise bounds of infringement, and I think Dr. Freese is more well positioned to answer that question

than I am." *See* March 3, 2017 Jarosz Dep. at 76:11-15.  Mr. Jarosz also confirmed that his reports were complete as of the date of his deposition, which was after Dr. Freese had served his report and been deposed. *See id.* at 21:8-12.

## IV. PHILIPS'S EXPERTS CANNOT TESTIFY ABOUT INFRINGING CLINICAL STUDIES AT TRIAL

Having failed to identify any infringing clinical studies in their expert reports or during their depositions, Dr. Freese and Mr. Jarosz cannot be permitted to testify at trial about whether one or more clinical studies infringed ZOLL's patents. *See Poulis-Minott*, 388 F.3d at 358 (Rule 26 requires "a complete statement of all opinions to be expressed and the basis and reasons therefor").

Philips may argue that the failure to address these issues is substantially harmless or otherwise justified such that this testimony need not be excluded. *See, e.g.*, Fed. R. Civ. P. 37(c)(1) (setting forth exception to mandatory exclusion where failure to disclose is "substantially justified" or "harmless").[1]  Philips would be incorrect. *See Carlucci*, 2012 WL 4094347 at *2 (finding no justification for introducing a new theory of liability after the submission of the expert report and explaining that it "can hardly be said to be harmless coming at the conclusion of discovery").  Philips has had access to information about ZOLL's clinical studies for years, and thus there is no justification for Philips's failure to disclose its complete opinions about them. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

---

[1] Philips may also claim that their experts' citation to clinical studies generally in their expert reports is enough to permit them to expand on these opinions at trial.  However, such disclosure is insufficient because it is not a complete statement of their opinions.  As this Court has explained, "asking [one's expert] to flesh out [an] argument at trial . . . would have been a clear violation of Rule 26's expert disclosure requirement." *RTR Techs., Inc. v. Helming*, 815 F. Supp. 2d 411, 430 n.10 (D. Mass. 2011), aff'd on other grounds, 707 F.3d 84 (1st Cir. 2013) (granting summary judgment).

(9th Cir. 2001) (upholding exclusion of expert opinion provided one month before trial that could have been disclosed earlier).  Further, as the First Circuit has recognized, Rule 26 is designed to "alleviate the heavy burden placed on a cross-examiner confronted by an opponent's expert whose testimony had just been revealed for the first time in open court."  *Licciardi v. TIG Ins. Grp.*, 140 F.3d 357, 363 (1st Cir. 1998) (quotation marks omitted); *see also* 8A Fed. Prac. & Proc. Civ. § 2049.1 (3d ed.) ("The rule makes a special point of the importance of full disclosure and supplementation with regard to expert testimony, a traditionally troublesome area concerning last–minute changes.").  ZOLL is prejudiced by the admission of any previously undisclosed (and, for Mr. Jarosz, still currently unknown) testimony by Philips's experts about infringing clinical studies because ZOLL has "had no opportunity to prepare [its] own case or conduct a meaningful cross examination" on this topic.  *Licciardi*, 140 F.3d at 364.  As a result, Philips's failure to disclose opinions on infringing clinical studies by its experts is not harmless.

## V. IF DR. FREESE'S TESTIMONY IS NOT STRIKEN, MR. JAROSZ SHOULD STILL BE PRECLUDED FROM TESTIFYING ABOUT ADDITIONAL INFRINGING CLINICAL STUDIES ON WHICH DR. FREESE DID NOT OPINE

As set forth above, Mr. Jarosz did not identify any infringing clinical studies in his report, and at deposition Mr. Jarosz specifically testified that he did not know how many studies were actually infringing because he is **"*not an infringement expert*.**"  Jarosz March 3, 2017 Dep. at 85:3-7 (emphasis added).  When asked a similar question later in the deposition, Mr. Jarosz explained that that he relied on Dr. Freese.  *Id.* at 76:7-15.

In his expert report, however, Dr. Freese did not identify any clinical studies as infringing. The only studies that Dr. Freese has ever opined are infringing are the Chen[2] and Stothert[3] studies that he testified were infringing studies at trial. (Dr. Freese also testified about the Niebauer study at trial, but he did not testify that it was infringing.[4]) Given that Mr. Jarosz relies on Dr. Freese on the topic of ZOLL's infringing clinical studies, and Dr. Freese has only ever identified two studies as infringing, this Court should at a minimum preclude Mr. Jarosz from testifying about or relying on additional infringing clinical studies beyond the Chen and Stothert studies identified by Dr. Freese. *Poulis-Minott*, 388 F.3d at 358 (Rule 26 requires "a complete statement of all opinions to be expressed and the basis and reasons therefor").

## VI.  CONCLUSION

Neither Dr. Freese nor Mr. Jarosz disclosed an opinion in their expert report that ZOLL's clinical studies were infringing. Both experts confirmed that their expert reports were their complete opinions, and neither opined at deposition about infringing clinical studies. Based on this failure to disclose, Dr. Freese's testimony about infringing ZOLL studies should be striken and neither Mr. Jarosz nor the jury should be permitted to rely on this testimony. In the alternative, Mr. Jarosz should be limited to testifying about the only two ZOLL studies that Dr. Freese testified were infringing.

---

[2] *See* Trial Ex. 1442; *see also* Trial Tr. 148:3-9 (Q. Let me start over, Dr. Freese. Is this another example of Zoll using its defibrillators in an infringing way? A. These defibrillators were used after the period we've described, and according to that same paragraph we were just looking at, the program itself was sponsored by Zoll Medical Corporation. So, yes, it was infringing.")

[3] *See* Trial Ex. 1445; *see also* Trial Tr. at 2-145:24 – 2-146:6 (Q. Doctor, did Zoll infringe Philips's SMART biphasic patents by performing this clinical study? . . . A. This study was performed after the 1999 FDA approval and, per the Appellate Court and His Honor's instructions, would be a violation -- I'm sorry -- infringement.").

[4] *See* Trial Ex. 1444; *see also* Trial Tr. at 2-136:4-11 (discussing Niebauer study but making no reference to infringement); Trial Tr. at 2-137:11-23 (same).

Respectfully submitted,

Dated: July 27, 2017     */s/ Alan J. Heinrich*
Morgan Chu (admitted *pro hac vice*)
David I. Gindler (admitted *pro hac vice*)
Alan J. Heinrich (admitted *pro hac vice*)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
mchu@irell.com; dgindler@irell.com;
aheinrich@irell.com
(310) 277-1010

Rebecca Lyn Carson (admitted *pro hac vice*)
IRELL & MANELLA LLP
840 Newport Center Dr., Ste. 400
Newport Beach, CA 92660
rcarson@irell.com
(949) 760-0991

Thomas F. Maffei (BBO# 313220)
tfmaffei@sherin.com
Sara Jane Shanahan (BBO# 567837)
sjshanahan@sherin.com
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000

*Counsel for Defendant ZOLL MEDICAL CORPORATION*

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1, the undersigned certifies that counsel for the parties conferred and attempted in good faith to resolve or narrow the issues, but were unsuccessful.

*/s/ Alan J. Heinrich*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 27th day of July, 2017.

*/s/ Alan J. Heinrich*